UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRADY HUDSON, *et al.*,

    Plaintiffs,

vs.

PATRICIA CARUSO, *et al.*,

    Defendants.

                           /

Case No. 1:10-cv-58

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a prisoner civil rights action filed by four inmates at the Michigan Depart of Corrections (MDOC), Grady Hudson, Samuel L. Hunter, Rodney Dwayne Thomas and Bradley R. Koss. This matter is now before the court on plaintiffs' motion for class action certification, preliminary injunction and appointment of counsel (docket no. 10), plaintiffs' second request for a preliminary injunction (docket no. 15), defendants' motion for summary judgment based on failure to exhaust administrative remedies (docket no. 31); defendants' motion to dismiss (docket no. 59).

**I.    Background**

Plaintiffs' complaint named seven defendants: MDOC Director Patricia Caruso; MDOC Deputy Director Dennis Straub; Assistant Food Service Director Brad Purves; Special Activities Coordinator Michael Martin; Warden Carole Howes; Food Service Director Kevin O'Brien; and Chaplain Donald Tompkins.

Plaintiffs have alleged nine counts as follows. Counts I through IV arise under The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"). Compl. at p. 7. Each of these counts seek injunctive or declaratory relief. In Count I, plaintiffs

alleged that they are entitled to halal food at LCF. *Id.* at ¶¶ 21-45. In Count II, plaintiffs alleged that the prohibition against Islamic Prayer Oil in PD 05.03.150A violates their religious rights "without a compelling interest in violation of RLUIPA." *Id.* at ¶¶ 46-59. In Count III, plaintiffs alleged "that it is impossible to fast, or, observe the Eids [Islamic Festivals] in accordance with their religious beliefs, where there is a prohibition on halal food" and that this violates RLUIPA. *Id.* at ¶¶ 60-65. In Count IV, plaintiffs alleged that defendants refuse to change PD 05.03.150A to allow them to acquire "Islamic garments for Salat" and that this violates RLUIPA. *Id.* at ¶¶ 66-72.

Counts V through VIII arise under § 1983. *Id.* at p. 16. In Count V, plaintiffs alleged that defendants have violated their First Amendment rights and Fourteenth Amendment due process rights by failing to provide a "Halal Food Diet Line." *Id.* at ¶¶ 75-76. Plaintiffs also alleged that defendants violated their equal protection rights under the Fourteenth and Fifth Amendments, pointing out that defendants "provide Kosher diets for those of the Jewish beliefs [sic]" and "Strict Vegetarian diets for those of the Buddhist beliefs." *Id.* at ¶ 75-77.[1] In Count VI, plaintiffs alleged violations of the First, Fifth and Fourteenth Amendments arising from the prohibition of Islamic Prayer Oil in PD 05.03.150A. *Id.* at ¶¶ 79-83. In Count VII, "Eid Celebration/Fast of Ramadan," plaintiffs re-alleged their complaints about the lack of a Halal Diet Line ( ¶¶ 73-78) and stated "[a]foresaid Defendants provide special meals that meet the fast and festival requirements of the practitioners of the Jewish beliefs." *Id.* at ¶¶ 84-85. In Count VIII, plaintiffs alleged that the prohibition from "Islamic garments" in PD 05.03.150A violates their rights under the First, Fifth and Fourteenth Amendments, including the equal protection clause. *Id.* at ¶¶ 86-91. In this regard,

---

[1] Other than listing the Fifth Amendment, plaintiffs do not elaborate on the nature of this alleged constitutional violation.

plaintiffs alleged that "Defendants allow practitioners of the Jewish belief, to purchase and wear religious garments for ritual prayer" and that "Defendants prohibit Islamic garments for no other reason than their [sic] being Islamic." *Id.* at ¶¶ 89-90.

In Count IX, plaintiffs alleged that defendants conspired and agreed to deprive plaintiffs of their "well settled rights under the US Constitution and Federal Law" and "knowingly acquiesced [in] the actions of one or all others, in knowing disregard for the US Constitution or Federal Law," in violation of 42 U.S.C. §§ 1983 and 1986. *Id.* at ¶¶ 92-95.

Plaintiffs seek a declaratory judgment that MDOC Policy Directive (PD) 05.03.150, Attachment "A" and PD 04.07.112 Attachments "A," "B" and "C" "facially, and, as applied, and any and all policies and procedures that are found [are] violative of Plaintiffs rights to freely exercise their religion under RLUIPA, and, the Fourteenth Amendment of The United States Constitution." *Id.* at p. 21. Plaintiffs also seek injunctive relief "for the immediate provision of Halal Foods, and restoration of Plaintiffs rights to freely exercise their religion under RLUIPA, and, the Fourteenth Amendment of The United States Constitution." *Id.* Plaintiffs also seek $5,000.00 each in compensatory damages from each defendant "as compensation and restitution for injuries sustained from the purposely continuous deprivations of Plaintiffs Fourteenth Amendment rights for each Count I-IX of this Complaint, separate and distinct from one another;" $5,000.00 each in compensatory damages from each defendant "as compensation and restitution for injuries sustained from the purposely continuous deprivations of Plaintiffs Fourteenth Amendment rights for each Count I-IX of this Complaint, separate and distinct from one another;" $5,000.00 each in punitive damages "to serve as compensation and a deterrent for Defendants actions committed recklessly,

with callous indifference to Plaintiffs Federally Protected Fourteenth Amendment Rights for each Count I-IX of this Complaint, separate and distinct from one another." *Id.* at pp. 21-22.

**II.     Plaintiffs' motion for class certification and appointment of counsel**

Plaintiffs seek to certify a class "of all who practice Al-Islam throughout the MDOC, and involve common questions of law and fact." *See* Motion for class action certification (docket no. 10).

As an initial matter, the motions seeking class certification and appointment of counsel is not properly before the court, because plaintiffs failed to file supporting briefs. W.D. Mich. LCivR 7.1(a) requires that all motions, except those made during a trial, shall be accompanied by a supporting brief, which "shall contain a concise statement of the reasons in support of the party's position and shall cite all applicable federal rules of procedure, all applicable local rules, and the other authorities upon which the party relies." Plaintiffs' motion merely states that they are proceeding under Fed. R. Civ. P. 23.[2] For this reason, the motions should be denied

Even if the court were to consider plaintiffs' motions, both would fail on the merits.

**A.     Class certification**

To obtain certification of a proposed class, plaintiffs must satisfy the following requirements: (1) the class must be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a). Even

---

[2] The court notes that plaintiffs' motion, which also seeks a preliminary injunction, includes an affidavit and documents related to the request for injunctive relief, but contains no discussion of class certification. The court will address plaintiffs' request for injunctive relief separately.

if plaintiffs could satisfy the first three requirements, unrepresented *pro se* prisoners are not adequate class representatives able to fairly represent a class of plaintiffs. *See Ziegler v. Michigan*, 90 Fed. Appx. 808, 810 (6th Cir. 2004) ("non-attorneys proceeding *pro se* cannot adequately represent a class") (*citing Fymbo v. State Farm Fire and Casualty Company*, 213 F.3d 1320, 1321 (10th Cir.2000)); *Palasty v. Hawk*, 15 Fed. Appx. 197, 200 (6th Cir. 2001). *See generally*, *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (The "[a]bility to protect the interests of the class depends in part on the quality of counsel, and we consider the competence of a layman representing himself to be clearly too limited to allow him to risk the rights of others. . . . it is plain error to permit this imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action") (internal citations omitted). Plaintiffs' motion for class certification (docket no. 10) should be denied.

### B. Appointment of counsel

The court previously denied a motion for appointment of counsel by plaintiff Hudson. *See* Order (docket no. 20). Appointment of counsel is within the court's discretion. *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996). As a general rule, trial courts in the Sixth Circuit do not appoint lawyers for indigent pro se prisoners in civil rights cases and prisoner grievance-type cases unless extraordinary circumstances exist. *Id.* The claims raised in this lawsuit, which raises issues related to conditions of confinement, do not present extraordinary circumstances sufficient to support the appointment of counsel. Furthermore, plaintiffs desire to transform their individual complaints raised in this civil rights lawsuit into a class action is not an "extraordinary circumstance" sufficient to support the appointment of counsel. Accordingly, plaintiffs' motion for appointment of counsel (docket no. 10) should be denied.

### III. Defendants' motion to dismiss for failure to state a claim

Defendants have moved to dismiss plaintiffs' claims seeking monetary relief against them under RLUIPA "in their individual capacities." Motion to Dismiss (docket no. 59). Defendants bring this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Plaintiffs' Counts I, II, III and IV seek relief under RLUIPA, a federal statute which prevents the government from placing a burden on prisoner's religious exercise, providing in pertinent part that:

> (a) No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

6

42 U.S.C. § 2000cc-1. Section 3 of RLUIPA (42 U.S.C. § 2000cc-2) allows individuals to file actions under the statute as follows, "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* at § 2000cc-2(a). For purposes of a claim brought under § 2000cc-2(a), the term "government" is defined as: "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law. . ." *Id.* at § 2000cc-5.

Defendants' motion is not an appropriate response to plaintiffs' complaint, because they do not seek damages under RLUIPA. As discussed in § I, *supra*, while plaintiffs seek damages for the constitutional violations under §§ 1983 and 1986, they seek only declaratory and injunctive relief under RLUIPA. Compl. at pp. 21-22. While *pro se* complaints require less stringent reading than those drafted by attorneys, *Haines v. Kerner*, 404 U.S. 519 (l972), the duty to be "less stringent" with *pro se* complaints does not require this court to conjure up unpled allegations. *McDonald v. Hall*, 610 F.2d 16 (lst Cir. l979). To the extent that plaintiffs' response argues that they are entitled to damages for RLUIPA violations, such arguments are contrary to the allegations in their complaint. Because defendants seek to dismiss claims for monetary damages that are not alleged, their motion to dismiss (docket no. 59) should be denied.

**IV. Defendants' motion for summary judgment**

**A. Legal standard**

Defendants seek summary judgment for lack of exhaustion of administrative remedies. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

7

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Exhaustion requirement

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, "or any other Federal law," must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983"). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the

state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford*, 548 U.S. at 90-91. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### C. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the appropriate MDOC official.

### D. Plaintiffs have failed to exhaust their claims

Richard Stapleton, Administrator of the Office of Legal Affairs for the MDOC, and the second line supervisor of the Grievance and Appeals Section with that office, testified via an affidavit that none of the plaintiffs exhausted a grievance with respect to the claims alleged in this action. Stapleton Aff. (docket no. 32-3). Hudson filed two grievances through Step III. However, both of these grievances dealt with other issues. Grievance no. ICF 2007-06-1032-28e complained that staff did not process a legal mail disbursement on July 12, 2006, while and grievance no. LCF 2009-03-288-15 complained that staff did not process his legal mail in a timely manner on March 13, 2009. *Id.* at ¶¶ 7-9. Koss filed one grievance through Step III, identified as grievance no. LCF 08-10-867-20b. *Id.* at ¶ 11. This grievance did not contest the broad issues alleged in this lawsuit. Rather, this grievance involved a dispute regarding plaintiff's failure to participate in the Ramadan fast due to a medical condition and Chaplain Tompkins' failure to let Koss participate in Eid al Fitr after Ramadan ended. Grievance No. LCF 2008-10-867-20b (docket no. 32-4, A-8). The Step III response from staff allowed Koss to participate in future Eid celebrations. Stapleton Aff. at ¶ 11.[3] Thomas filed one grievance through Step III, grievance no. SRF 06-04-476-03d. *Id.* at ¶ 12. However, this grievance, which involved the lack of cleaning and hygiene products and a damaged pillow and mattress, is not germane to the issues alleged in this action. *Id.* Finally, Hunter appealed a grievance through Step III, grievance no. 1999-10-1406-17a. *Id.* at ¶ 13. This grievance is no longer available, because the retention period for maintaining 1999 Step III grievance appeals has lapsed. *Id.* Clearly, a grievance from 1999 would not be relevant to the present action, which arose from incidents that occurred a decade later.

---

[3]The court discussed this grievance in *Koss v. Tompkins*, 1:09-cv-35 (W.D. Mich.) (docket nos. 44 and 47).

Plaintiffs do not dispute the facts as set forth in Mr. Stapleton's affidavit. Rather, plaintiffs contend that their claims are not subject to the grievance requirement because the claims "are non-grievable issues" pursuant to PD 03.02.130 ¶ F 1. Plaintiffs allege in their complaint that Hudson contacted defendants between August 12, 2009 and December 21, 2009 "as a representative of all named [p]laintiffs . . . in an attempt to resolve the issues herein without Court involvement." Compl. at ¶ 19. Plaintiffs assert that their claims "are in fact caused by the content of policies and procedures, and therefore may only be 'properly exhausted' by directing comments to the Warden's Forum" and that Hudson, a Warden's Forum representative, presented the issue at the forum on August 12, 2009. Plaintiffs' Response at p. 1 (docket no. 36).

With respect to the alleged non-grievable issues, plaintiffs complain that they are not allowed to eat food prepared in a separate halal kitchen, to wear religious garments, or to use prayer oil citing the MDOC Handbook on Religious Groups, and attachments to PD 05.03.150 and PD 04.07.112. The court previously discussed the dietary rules which appear in the MDOC Handbook of Religious Groups. *See* Report and Recommendation at pp. 5-11 (docket no. 48). Allowable religious items for Al-Islam (Muslim) are set forth in PD 05.03.150A. *See* "Recognized Religious Groups Authorized to Conduct Group Religious Services/Activities" (effective January 1, 2009) (docket no. 10-8). Finally, clothing items for prisoners are set forth in PD 04.07.112A, 04.07.112B, and 04.07.112C. *See* PD 04.07.112 "Prisoner Personal Property) (effective June 1, 2009) (docket no. 10-9).[4]

---

[4] Plaintiffs refer to the attachments A to PD 05.03.150 and attachments A, B and C to PD 04.07.112. The attachments are enumerated as PD 05.03.150A and PD 04.07.112A, B and C. All of these attachments were revised on August 16, 2010. *See* current MDOC Policy Directives www.michigan.gov/corrections . It does not appear that the 2010 revisions altered that portion of the attachments at issue in this action.

11

Contrary to plaintiffs' arguments, each of them could have filed a grievance regarding the content of the MDOC Policy Directives (and the MDOC handbook) as the policies applied to them. PD 03.02.130 ¶ E identifies grievable issues in pertinent part as follows, "Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures." PD 03.02.130 ¶ F 1, relied upon by plaintiffs, identifies certain non-grievable issues:

> Two or more prisoners and/or parolees may not jointly file a single grievance regarding an issue of mutual impact or submit identical grievances regarding a given issue as an organized protest. Such grievances shall be rejected by the grievance coordinator. Grievances that raise the following non-grievable issues also shall be rejected:
>
> 1.  A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the content of policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.150 "Prisoner Housing Unit Representatives/Warden's Forum."

PD 03.02.130 ¶ F 1 (emphasis in original).

As one court observed, the grievance requirement in PD 03.02.130 ¶ F 1 "mirrors the requirement of section 1983 that a plaintiff's personal rights be violated and not the rights of someone else." *Melton v. Vasbinder*, No. 07-15480, 2009 WL 928861 at *3 (E.D. Mich. March 30, 2009). *See generally, Jaco v. Bloechle*, 739 F.2d 239, 241-42 (6th Cir. 1984) ("[b]y its own terminology, the statute [42 U.S.C. § 1983] grants the cause of action 'to the injured party' . . . it is an action *personal* to the injured party" and "cognizable only by the person whose civil rights have been violated) (emphasis in original). In *Melton*, the court rejected the prisoner's argument that he could not grieve the content of prison policy which "mis-educates and sexually exploits male offenders" and subjected him to "inappropriate shake downs," explaining that in order to state a §

1983 claim plaintiff must allege that his rights have been violated rather than those of his fellow prisoners and that the MDOC grievance policy allows for all such claims to be grieved by plaintiff. *Id.*

Plaintiffs have alleged that defendants violated their rights under the First, Fifth and Fourteenth Amendments and RLUIPA, and that portions of PD 04.07.112 and 05.03.150 specifically violated their rights by prohibiting them from acquiring Islamic garments and prayer oil. To the extent that plaintiffs claim that the policy directives violate their rights under the federal constitution or RLUIPA, they raise an issue regarding the content of a policy or procedure as it was applied to them. Such claims are explicitly grievable under PD 03.02.130 ¶ F 1. *See generally, Crump v. Caruso*, No. 2:09-cv-194, 2010 WL 3720068 (W.D. Mich. Sept. 17, 2010) (Order adopting report and recommendation) (rejecting plaintiff's claim that the MDOC's denial of his request for recognition of Shi'a Islam raised a non-grievable issue concerning the content of policy or procedure; "[c]ontrary to [p]laintiff's assertions, his request for Shi'a recognition did not challenge the content of a policy or procedure except as it was specifically applied to him").

Under these circumstances, plaintiffs were required to exhaust these claims under the PLRA. Plaintiffs have failed to properly exhaust any grievances in accordance with the applicable procedural rules. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants are entitled to summary judgment with respect to plaintiffs' claims.

### V. Plaintiffs' motions for injunctive relief

The court previously denied plaintiffs' motion for a preliminary injunction to establish a partial Halal Kitchen at LCF. *See* Report and Recommendation and Order (docket nos. 48 and 53). Pending before the court are two motions seeking preliminary injunctions against

defendants (docket nos. 10 and 15). The first preliminary injunction request (included in docket no. 10) does not ask for any particular relief. In an affidavit in support of this motion, plaintiff Hudson stated that plaintiffs' seek that the court order defendants "to immediately establish Halal Kitchens and Halal Food Diet Lines" so that they can freely practice their religious beliefs "to the least restrictive means without being compelled to consume and defile out bodies with any food that violates our sincerely held religious beliefs." 2nd Aff. of Hudson at ¶ 2 (docket no. 10). In addition, plaintiff Hudson stated that the court should order defendants "to immediately allow [a]ffected persons to purchase the requested Islamic mandatory garments that are available within departmental penological pricing and color schemes, so that [a]ffected persons can freely practice our religious beliefs to the least restrictive means without being compelled to compromise the integrity of religious practice." *Id.* at ¶ 7. Finally, Hudson seeks a court order directing the MDOC to allow "mandated prayer oil." *Id.* at ¶ 14. The second preliminary injunction request (docket no. 15) asks the court to order defendants "to provided Plaintiffs food that meet Plaintiffs' minimum religious requirements; and allow Plaintiffs to purchase prayer oils and religious garments for prayer."

        The present motions for preliminary injunctions seek the ultimate relief as requested in plaintiffs' complaint. Because the complaint is subject to dismissal for failing to exhaust administrative remedies, there is no basis to grant a preliminary injunction. Accordingly, plaintiffs' motions for injunctive relief (docket nos. 10 and 15) should be denied.[5]

---

[5] Even if the complaint survived summary judgment, plaintiffs would not be entitled to the issuance of preliminary injunctions for the reasons as stated in the first order denying injunctive relief. *See* docket nos. 44 and 48. Plaintiffs do not seek an injunction to maintain the status quo. Rather, plaintiffs seek to have this court direct the MDOC to change its policy directives and to authorize the use of a specific religious object (Islamic Prayer Oil) and to wear specific religious clothing (Islamic garments). Plaintiffs' requested relief would require this court to intervene in the day-to-day operation of the prison by defining "Islamic Prayer Oil" and "Islamic garments" as those terms apply in the context of MDOC Correctional Facilities. It is not in the public interest for this court to change the scheme of the MDOC Policy Directives with respect to

## VI. Recommendation

I respectfully recommend that plaintiffs' motions for class certification, preliminary injunction and appointment of counsel (docket no. 10) be **DENIED**, that defendants' motion to dismiss (docket no. 59) be **DENIED**, that defendants' motion for summary judgment (docket no. 31) be **GRANTED**, that plaintiffs' second motion for preliminary injunction (docket no. 15) be **DENIED**, and that this action be dismissed in its entirety.


Dated: January 24, 2011                                          /s/ Hugh W. Brenneman, Jr.
                                                                 HUGH W. BRENNEMAN, JR.
                                                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

religious practices, prisoner property and prisoner clothing under the guise of motion for a preliminary injunction. Where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432, 438, n. 3 (6th Cir. l984). *See generally, Bell v. Wolfish*, 441 U.S. 520, 548 (1979) ("judicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial").